# United States District Court
# District of Massachusetts

| | |
|---|---|
| **JUSTIN DOUGLAS,**<br>    **Plaintiff**<br><br>**v.**<br><br>**CITY OF SPRINGFIELD, DET. GREGG BIGDA, SGT. STEVEN KENT, DET. ROBERT PATRUNO, DET. THOMAS KAKLEY, DET. MARK TEMPLEMAN, DET. EDWARD KALISH, DET. CHRISTOPHER BATES, and MASS. STATE POLICE TROOPER LIAM R. JONES,**<br>    **Defendants** | **CIVIL ACTION NO: 3:14-CV-30210-MAP** |

_____

### DEFENDANT CITY OF SPRINGFIELD'S STATEMENT OF UNDISPUTED MATERIAL FACTS.
_____

Defendant, City of Springfield, submits the following Statement of Material Facts as to which Defendant contends there is no issue to be tried, pursuant to Fed. R. Civ. P. 56(c)(1) and Local Rule 56.1:

| *Material Fact* | *Evidence for Fact* |
|---|---|
| 1. The Plaintiff, Justin Douglas (hereinafter "Mr. Douglas" or "Plaintiff") brought this action pursuant to 42 U.S.C. §1983, in which he alleges civil rights violations under the United States Constitution brought against seven sworn officers of the Springfield Police Department and a state trooper in their individual capacity | <u>Complaint,  ¶¶ 1-12.</u> |

| Material Fact | Evidence for Fact |
|---|---|
| as well as the City of Springfield. | |
| 2. The *Monell* claim  in Count II states: (1) "City of Springfield has maintained customs, policies and practices that evince deliberate indifference to the rights of citizens that come in contact with members of the police department." | Complaint at ¶ 96 |
| 3. The Plaintiff alleges that "The City of Springfield has failed to maintain a minimally appropriate training program to train its officers in key areas of law enforcement including on the use of force and requiring officers to file truthful police reports." | Complaint at ¶ 97 |
| 4. The Plaintiff alleges: that "The City of Springfield has failed to train, supervise and discipline police officers." | Complaint at ¶98 |
| 5. The Complaint alleges: "As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein." | Complaint at ¶ 99 |
| 6. The facts of what occurred during the underlying arrest of Plaintiff are disputed. In particular, whether Plaintiff was injured and whether the use of force by the officers was justified or excessive. | Not applicable |
| A.    **Facts related to the incident.** | |
| 7. By way of review, on March 26, 2012, the Defendants obtained and executed a warrant for the arrest of the Plaintiff. | Complaint at ¶ 17; Answer at ¶17. |

| Material Fact | Evidence for Fact |
|---|---|
| 8. The Defendants learned that Douglas was staying at the Springfield Inn, located at 1573 Riverdale Street in West Springfield, with his girlfriend, Samantha Rauls ("Ms. Rauls"). | Complaint at ¶ 18; Answer at ¶18 |
| 9. Massachusetts State Trooper Jones obtained keys to the Plaintiff's room (Room 35) and along with other defendants entered the room to make the arrest. | Complaint at ¶ 19; Answer at ¶19. |
| 10. The Plaintiff was then found seated in the bathroom on the toilet and was thereafter handcuffed by Springfield Police Detective Gregg Bigda. | Complaint at ¶ 21; Answer at ¶21; Ex 2(a) Bigda Depo at p. 23 ¶¶ 10-17; Ex. 2(b) Douglas Depo at p. 189-190 ¶¶ 23-2 |
| 11. Officer Bigda then walked the Plaintiff out of the bathroom holding his left arm with his right hand. | Ex 2(a) Bigda Depo at p. 25-26 ¶¶ 12-2; Ex. 2(b) Douglas Depo at p. 64 ¶¶ 20-21. |
| 12. Up to this point, the Plaintiff was submitting to arrest and Det. Bigda was walking him toward the door to the room. | Ex. 2(a) - Bigda Depo at p. 24-26 ¶¶ 18-2 |
| 13. As the Plaintiff was being escorted out of the room he saw Trooper Liam Jones and Detective Kakley detaining Ms. Rauls on the ground by the bed. The Plaintiff then, as stated in his deposition, "took a step forward and looked in his face like, sir pick her up…" | Ex. 2(b)  Douglas Depo at p. 66 ¶¶ 10-13 |

| Material Fact | Evidence for Fact |
|---|---|
| 14. Detective Bigda stated that Mr. Douglas "became enraged…Screaming, 'She's got nothing to fucking do with this, get her off the fucking ground.' He called us a piece of shit." | <u>Ex. 2(a) - Bigda Depo at p. 27 ¶¶ 1-7.</u> |
| 15. The Plaintiff then started to pull away from Bigda and "dropped his shoulder and tried to pull his way by me", as a result of this Bigda then, "…swept his [Mr. Douglas] feet… and both of us landed down on the floor basically face to face and he was going wild." | <u>Ex. 2(a) - Bigda Depo at p. 30 ¶¶ 3-7</u> |
| 16. Douglas was now on his right side but facing up resisting Bigda's order to submit, Douglas was "kicking his feet widely and squirming around" at that point Bigda "smashed him on the side of the head twice with a closed fist . . .at that point he completely complied and said, 'all right, all right. I'm done.'" | <u>Ex. 2(a) Bigda Depo at p. 30 ¶¶ 23-24. Bigda Depo at p. 30-31 ¶¶ 21-4.</u> |
| 17. Ms. Rauls in her deposition confirmed that the Plaintiff "pulled away from the cop [Bigda]," and that the Plaintiff was only struck "about three times." | <u>Ex. 2(e) - Rauls Depo at p. 81 ¶¶ 10-17, ," Id. at p. 83 ¶ 6</u> |
| 18. These facts are further corroborated by Detective Robert Patruno, who was a few feet from the Plaintiff, and stated in his deposition that the Plaintiff became combative and was taken down by Bigda, then when the Plaintiff further resisted Patruno came to Bigda's aid by controlling | <u>Ex. 2(d) - Patuno Depo. At p. 54-62 ¶¶ 13-7.</u> |

| Material Fact | Evidence for Fact |
|---|---|
| the Plaintiff's legs; the Plaintiff was subdued after Bigda struck him in the head, without a gun. Plaintiff had no visual injuries. | |
| 19. The Plaintiff stated that after he took a step toward Ms. Rauls he was "blind-sided by Bigda," and a was struck "maybe about ten times," before hitting the ground in "seconds," then while on the ground he was then hit an additional "twenty or thirty times," | <u>Ex. 2(b) - Douglas Depo at p. 69 ¶¶ 5-6, at p. 134 ¶ 23, at p. 135 ¶5, at p. 135 ¶5.</u> |
| 20. The Plaintiff's, alleges that Detective Bigda pistol whipped him in the head. | <u>Complaint, at ¶24</u> |
| 21. However, Officer Bigda stated that his gun was holstered when he escorted Douglas out of the bathroom. | <u>Ex. 2(a) - Bigda Depo at p. 34-35 ¶¶ 20-3.</u> |
| 22. During the Plaintiff's deposition he the only mention that he was hit with a gun was after his girlfriend, Ms. Rauls, shouted that he had been so struck. | <u>Ex. 2(b) - Douglas Depo at p. 121 ¶¶18-24.</u> |
| 23. After the arrest of the Plaintiff and Ms. Rauls they were both transported to the Massachusetts State Police Barracks in Springfield, Massachusetts. | <u>Complaint at ¶ 32; Answer at ¶32.</u> |
| 24. The Plaintiff was then booked and photographed. No visible injuries or blood is apparent through this photo. | <u>Ex.6 -  MSP Booking Photo.</u> |

| Material Fact | Evidence for Fact |
|---|---|
| 25. The Plaintiff stated, in his deposition, that the black line on his left side was "blood was coming down my left shoulder," | <u>Ex. 2(b) - Douglas Depo at p. 201 ¶¶ 12-13</u> |
| 26. The photograph is inconsistent with the Plaintiff's claim that he was hit an additional "twenty or thirty times," <u>and </u>that Detective Bigda pistol whipped him in the head. | <u>Ex. 2(b) -  Douglas Depo at p. 135 ¶5, Complaint at ¶24,</u> |
| 27. The Plaintiff, refused medical treatment when an ambulance arrived at the State Police Barracks. | <u>Ex. 2(b) -Douglas Depo at p. 148 ¶ 15;</u><br>Ex. 3 - <u>Refusal of Transport</u> |
| 28. Sgt. Steven Kent, stated in his deposition, that the Plaintiff did not appear to have any signs of injuries or have any blood coming from his face. | <u>Ex. 2(c) - Kent Depo at p. 64 ¶ 4-9</u> |
| 29. Officer Robert Patruno, in his deposition, stated that the Plaintiff did not appear to have any signs of injuries or have any blood coming from his face, nor was he complaining of pain. | <u>Ex. 2(d) - Patruno Depo at p. 63-64 ¶¶ 16-2.</u> |
| 30. Edward Kalish, in his deposition, stated that the Plaintiff did not appear to be injured. | <u>Ex. 2(f) Kalish Depo at p. 40 ¶¶ 9-11</u>. |
| 31. Officer Bigda, in his deposition, stated that he did not recall if the Plaintiff was injured or bleeding. | <u>Ex. 2(a)- Bigda Depo at p. 36 ¶¶ 1-4</u> |
| 32. Trooper Liam Jones, in his | <u>Ex 5 - Jones Ints. at No. 2 ¶ 5.</u> |

| *Material Fact* | *Evidence for Fact* |
|---|---|
| interrogatories, stated that the Plaintiff complained of injuries to Trooper Clapprood, however, he himself did not observe any injuries. | |
| **B.   Facts related to *Monell* Claim** | |
| 33. The Amended Complaint lists other incidents not related to the underlying civil rights violation, but stemming from several other civil lawsuits involving officers of the Springfield Police Department, as well as two criminal cases where rulings on motions to suppress were litigated. Several citizen's complaints against individual police officers are identified, without facts as to the resolution of those complaints. All together the Complaint includes a total of nineteen separate events in an attempt to display prior incidents in an attempt to show that the City failed to train its officers to prevent such events from occurring, or improperly disciplined or supervised its officers The events listed in the Amended Complaint in support of the *Monell* claim are summarized below as pertaining to each Defendant, as well as any connection to the City as related to training, discipline, or supervision. | Complaint at ¶¶ 49-90 |
| **1. Sgt. Steven Kent, Springfield Police Department.** | |
| 34. The Plaintiff describes four events which relate to Detective Kent's employment at the Springfield | Complaint at ¶¶ 54-56, 57, 60, and 80. |

| Material Fact | Evidence for Fact |
|---|---|
| Police Department. | |
| 35. Plaintiff references to <u>Ververis v. Kent et al.</u>, a U.S. District Court action filed in 2013, which involved an allegation of excessive force during an incident which occurred on January 9, 2011, where Sgt. Kent and three other SPD officers were involved. Officers were alleged to have dragged Mr. Ververis from his vehicle, beat him, and choked him until he was unconscious. Further, it was alleged that one of the officers (who is not a party here) unlawfully seized a phone of a bystander, who was allegedly recording the event. The complaint alleged that the police reports never contained a reference to the fact that the phone had been seized. | <u>Complaint at ¶¶ 54-55; Ververis Complaint, USDC 13-CV-30175-MAP</u> |
| 36. The complaint The Complaint cites to the denial of summary judgment for the City as part of his support for the Monell claim here. In fact, the complaint does not accurately describe the ruling on the City's summary judgment in Veveris and therefore the City's answer disputed the allegation here. In fact, this court in Veveris ALLOWED the City's motion, in part (as to Count VII of the complaint in that case alleging an unconstitutional policy) as it raised, in essence, the same claim previously rejected by this court regarding suppression of exculpatory evidence. As to Count VIII, which alleged a failure to train theory under *Monell*, the city's motion was denied in the Veveris case. The Veveris case ultimately resulted in a settlement. However, | <u>Complaint at ¶ 56;.  Answer at ¶ 56; Ververis ECF No. 72 ,Ververis Complaint at ¶¶ 54-64;Ververis Stip. of Dismissal ECF No. 85.</u> |

| Material Fact | Evidence for Fact |
|---|---|
| the Motion of Defendant Kent for Judgment on the Pleadings as to Counts V and VI which alleged a due process violation for withholding evidence, and conspiracy, (Dkt. No. 51 ) was ALLOWED. | |
| 37. During Sgt. Kent's deposition the Plaintiff inquired if any officers had been reprimanded or retrained as a result of the incident alleged in the Ververis case. | Ex. 2(c) - Kent Depo at p. 32-34 ¶¶ 11-7. |
| 38. Det. Kent stated that the Commissioner ordered that Officers Roberson and Mitchell, who were among the officers involved in the Veveris incident relative to the cell phone, (neither is a party here) be retrained as to Springfield Police Department Policies on how to carry a non-compliant person. | Ex. 2(c) - Kent Depo at p. 32-34 ¶¶ 11-7. |
| 39. The complaint here makes a conclusory statement that the "City of Springfield has failed to maintain a minimally appropriate training program to train its officers in key areas of law enforcement including on the use of force and requiring officers to file truthful police reports." | Complaint at ¶ 97. |
| 40. However, documents provided by the Defendant show that Detective Kent, as well as all of the other Springfield Officers named here, have received regular training specific to use of force and defensive tactics for the years 2009-2015. | Ex. 7 - Defendant Springfield Police Officers' Training |

| Material Fact | Evidence for Fact |
|---|---|
| 41. All of the officers received Police Academy training at a certified police academy as required by state law, pertaining to municipal police training schools, approval, and rules and regulations relative to schools. | <u>Ex. 7 Defendant Springfield Police Officers' Academy Records; See G.L. c. 6 § 118;, See also 550 CMR 3.00</u> |
| 42. "[e]very person who receives an appointment to a position on a full-time basis in which he will exercise police powers in the police department of any city or town, shall, prior to exercising police powers, be assigned to and satisfactorily complete a prescribed course of study approved by the municipal police training committee." | <u>G. L. c. 41 § 96B</u> |
| 43. Under the regulations promulgated under those statutes the Massachusetts Criminal Justice Training Council is responsible for the program curriculum used at the basic recruit academy which spans twenty-six (26) weeks. Included in the curriculum are sections on key areas of law enforcement including on the use of force and requiring officers to file truthful police reports in direct contrast to the bald conclusory allegations of the complaint. | Ex. 8 - Springfield Police Department General Orders. Ex. 1 - Police Academy Curricula |
| 44. The training specifically covers the legal duty of police to check arrestees for injury and to make written reports of such injuries, as required by the Massachusetts injured prisoner statute, <u>M.G.L. c. 276 § 33</u>. | <u>Ex. 8 - Springfield Police Department General Orders.</u> |

| Material Fact | Evidence for Fact |
|---|---|
| 45. Documents provided by the Defendants show that all of the officers named in this case received annual training specific to use of force and defensive tactics throughout 2009-2015. | Ex. 7 - Defendant Springfield Police Officers' Training |
| 46. The Complaint also references an incident which occurred more than thirteen years ago, filed May 14, 2003. October 22, 2013. The complaint accused Sgt. Kent and other SPD officers of violating the civil rights of a driver who alleged he was dragged from his car, thrown against the vehicle, told "he was being taken to a special place to get his ass kicked," and was then taken to the police station and strip searched. The City of Springfield and all named defendants denied all claims within the Lewis-Complaint. Ultimately the settled out of court and dismissed on July 15, 2004. | Complaint at ¶ 80; _Lewis v. Springfield et al._, USDC Docket No. 3:02-cv-30027, ECF |
| **2.  Detective Edward Kalish – Springfield Police Department** | |
| 47. The Plaintiff cites to a 2009 Citizen's Complaint lodged against Detective Kalish, where it was alleged that he, along with other officers, arrested a 15-year-old and without cause and allegedly slammed him against a car and punched and kicked him on the ground. | Complaint at ¶63. |
| 48. However, this complaint was ultimately not sustained after | Ex.4(b)  Kalish IIU |

| Material Fact | Evidence for Fact |
|---|---|
| investigation by the Internal Investigation Unit and review by the Police Commissioner as well as the City's civilian review board. | |
| 49. In Det. Kalish's deposition, the Plaintiff inquired about this event, along with others, Kalish stated that he has never had a complaint sustained against him. | <u>Kalish Depo at p 47 ¶¶ 7-9</u>. |
| 50. The Complaint here also contains the conclusory allegation that Springfield "has a policy, practice and usage of "not monitoring or controlling the use of force by police, to date on information and belief the City, its policymakers and the SPD have not enquired into or investigated the circumstances of Mr. Douglas' arrest and injury." | |
| 51. However, Documents provided by the Defendant show that Springfield has a specialized unit charged with investigating citizen complaints, known as the Internal Investigating Unit. | (Aff. of Pikula). . (See Exhibit   ) |
| 52. In addition, Springfield also has a system for civilian review of the IIU investigations, pursuant to an Executive Order of the Mayor known as the Community Police Hearing Board ("CPHB"). | Ex. 9 CPHB Reports |
| 53. As noted in the report, the CPHB was created by an Executive Order of Mayor Sarno in February 2010. The CPHB was an evolution from | <u>Ex. 9 – CPHB Report and Executive Order of the Mayor, Community Police Hearing Board ("CPHB")</u> |

| Material Fact | Evidence for Fact |
|---|---|
| the earlier Citizen Complaint Review Board (CCRB) established by former Mayor Ryan. The CCRB was first created in response to a study conducted by criminal justice experts Professor Jack McDevitt of Northeastern University and his Associate, Dr. Amy Farrell. Beginning in June of 2009, the former CCRB, under the coordination and guidance of the Mayor's Chief of Staff, Denise Jordan, began meeting to review the original Executive Order governing its activities and began discussing options amongst its members and legal counsel for improving the process and increasing the positive impact of the Board on the community. The former CCRB had issued a recommendation and report on December 9, 2009 and had also held a public hearing on its draft suggestions on that date. | |
| 54. The report also notes that Mayor Sarno requested that the Law Department, on January 11, 2010, expedite review of the suggestions and submit to him a proposal for an increased role for the community to play in the discipline of police officers charged with misconduct as a result of citizen complaints. Further input as to the best method of civilian oversight for Springfield was obtained on January 25, 2010 as a result of a public meeting held by the NAACP, which was attended by the Mayor, Police Commissioner, and City Solicitor, for the purpose of getting input from the community. Prior to issuing a new Executive Order, | Ex. 9 – CPHB Report and Executive Order of the Mayor, Community Police Hearing Board ("CPHB") |

| Material Fact | Evidence for Fact |
|---|---|
| Mayor Sarno requested that past management studies conducted on the Police Department, as well as the study conducted by experts Professor McDevitt and Dr. Farrell, and the MCAD settlement, be taken into consideration. In addition, the Law Department reviewed models used in cities across the country; met with the Police Commissioner; reviewed the contracts with the Police Commissioner and Police Unions; met with the Patrolmen's Union to discuss collective bargaining issues; and reviewed applicable statutes and ordinances. | |
| 55. As a result, in February 2010 Mayor Sarno expanded the authority of the Board to act as a hearing officer for the Police Commissioner and to make findings as to whether each complaint is sustained, and recommendations as to the discipline to be imposed. The Executive Order increased the role of the community in the discipline of police officers charged with misconduct as a result of citizen complaints, yet preserved the organization established by Ordinance, state law and contractual and collective bargaining obligations. | <u>Ex. 9 – CPHB Report and Executive Order of the Mayor, Community Police Hearing Board ("CPHB")</u> |
| 56. Under Mayor Sarno's Executive Order, the CPHB sits as an independent and non-police mayoral agency providing civilian oversight over the investigation of citizen complaints by the police | <u>Ex. 9 – CPHB Report and - Executive Order of the Mayor, Community Police Hearing Board ("CPHB")</u> |

| Material Fact | Evidence for Fact |
|---|---|
| department, makes recommendations to the Police Commissioner as to initiating disciplinary charges and renders hearing decisions for the Police Commissioner's consideration as required. | |
| 57. In addition, the Board plays an important outreach role in educating the community of the opportunity to file a complaint, public dissemination of information as to how and where to file a complaint, and the rights of the community in dealing with the police. The CPHB issues reports that summarize its activities, and includes observations and recommendations concerning its policies and practices in relation to the Police Department. | Ex. 9 – CPHB Report and - Executive Order of the Mayor, Community Police Hearing Board ("CPHB") |
| 58. The current chair of the CPHB is Attorney George Bourguignon. Attorney Bourguignon replaced Attorney Cynthia Tucker, who formerly served as MCAD Commissioner, and oversaw the investigation of the original complaint filed by the Pastor's Council that led to the creation of this civilian oversight board. One of the original members of the oversight board was from the Springfield Pastor's Council, who served as Vice Chair of the CPHB, Reverend Amos Baily who has since retired from the board. Members of the CPHB during 2014 and 2015 included: Robert C. Jackson, Albert P. Tranghese, Reverend Gail Hill, Salvatore Circosta, and Richard Muise. Since | Ex. 9 – CPHB Report and - Executive Order of the Mayor, Community Police Hearing Board ("CPHB") |

| Material Fact | Evidence for Fact |
|---|---|
| that time, Paul A. Phaneuf and Linda Caron have replaced Salvatore Circosta and Carmen Berry. | |
| 59. A copy of Mayor Sarno's Executive Order that was in effect for the 2014 and 2015 period is included in Appendix 3 to this report. Mayor Sarno has enacted changes in the Executive Order effective April 1, 2016. Under the order applicable to 2014 and 2015, the civilian Board was empowered to receive, hear, make findings and recommend action on complaints against Springfield police officers which allege: the use of excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive language. Investigations of complaints are conducted by the Springfield Police Department Internal Investigation Unit staff (IIU) under the direction of the Police Department Captain of Professional Responsibility. | Ex. 9 – CPHB Report and Executive Order of the Mayor, Community Police Hearing Board ("CPHB") |
| 60. Complaints about Springfield Police Officers may be made by any person whether or not that person is a victim of, or witness to, an incident. In addition, the Captain of Professional Responsibility reviewed all reports of injury to prisoners for the purpose of determining whether or not the department should initiate an IIU investigation and for consideration of possible disciplinary charges. | Executive Order of the Mayor, Community Police Hearing Board ("CPHB") |
| 61. Under the Executive Order that was | Ex. 9 – CPHB Report and |

| *Material Fact* | *Evidence for Fact* |
| --- | --- |
| in effect since 2010, CPHB members would individually review complaints in a case review process with a recommendation made as to whether the police commissioner should initiate disciplinary charges. | <u>Executive Order of the Mayor,</u><br><br><u>Ex. 9 – CPHB Report and Community Police Hearing Board ("CPHB")</u> |
| 62. The Commissioner, as Civil Service Appointing Authority, determines whether or not to issue a charge letter, leading to a full hearing in front of the CPHB acting as hearing officer under the civil service law; Chapter 31 of the Massachusetts General Laws. If a hearing was held on the charges, findings of fact were made and a recommendation for disposition was included with the CPHB hearing results sent to the Police Commissioner. The CPHB gathers statistics as to the number, type and disposition of all citizen complaints. The reports provided since 2010 include an overview of Internal Investigation Unit (IIU) and CPHB data. For period covering 2014 as well as 2015, the report submitted here includes a spreadsheet of all such cases sorted in tables regarding the number, type, and resolution of complaints against Springfield Police Department personnel, and according to whether the complaint was initiated by a citizen or by a member of the Springfield Police Department. Similar data for all such citizen complaints have been provided since 2010. To place the data in perspective, the level and frequency of involvement that the police officers have with the public in Springfield must be considered and can be used for comparison to | <u>Executive Order of the Mayor, Community Police Hearing Board ("CPHB")</u> |

| Material Fact | Evidence for Fact |
|---|---|
| other communities. In this regard, the CPHB has gathered the following data covering the total number of calls for service through the "911" emergency system (CFS) and the total number of arrests for the past several years, not including juveniles. | |
| 63. These statistics show that the number of complaints referenced in the complaint and lawsuits as a percentage of arrests is a small number. Compared with the number of calls for service, the number is very small for an urban communities, with 153,991 people, Springfield is the 3rd most populated city in the state of Massachusetts out of 351 cities based on July1, 2014 estimates on the U.S. Census Bureau website. | Ex. 9 – CPHB Report and Executive Order of the Mayor, Community Police Hearing Board ("CPHB") |
| **3. Detective Greg Bigda – Springfield Police Department** | |
| 64. The Plaintiff has stated eleven different events which relate to Detective Bigda's employment with the Springfield Police Department, some as far back as more than twenty years. | Complaint at ¶¶ 57, 60, 64, 68, 69, 70 – 75, 78, and 82. |
| 65. The City denied the allegations at paragraphs 64, 69 and 70 – 75. These paragraphs did not accurately portray the established facts in the cases referenced. | Answer at ¶¶ 64, 69, 70-75. |
| 66. The Plaintiff cites to a 2013 federal | Complaint ¶¶ 57; Palacio et al. v. |

| Material Fact | Evidence for Fact |
|---|---|
| district court case, , stating that Det. Bigda violated the plaintiff's [Palacio] rights when he repeatedly pointed his gun at unarmed and compliant people during a warrantless search. However, this case was settled out of court and the Plaintiff made no reference to it, and failed to question Bigda at his deposition regarding his involvement in it. There is no evidence that would demonstrate injury to the public due to Bigda's alleged lack of training or discipline from such conclusory allegations. | <u>Springfield et al. USDC 3:13-CV-30149.</u> |
| 67. The plaintiff cites to a 2012 federal district court case, The Thomas case was tried before a jury in the Massachusetts Federal District Court and on June 6, 2012, a verdict in favor of the defendant on all triable issues was returned. | <u>Thomas v. Springfield. Complaint at ¶ 60. Thomas v. City of Springfield, 3:10-CV-30090 (2012); Thomas Judgment.</u> |
| 68. The Complaint cites to a Citizen Complaint dating back some ten years ago, where it was alleged that in 2006 Bigda "mistook an innocent man for a suspect and with another officer dragged him from a car and even though he did not resist". The complaint alleged Bigda beat him and handcuffed him – only to release him when another officer advised he was the wrong man. However, this complaint was investigated by the IIU, and was not sustained against Detective Bigda. | <u>Complaint at ¶ 68.  Bigda IIU.</u> |
| 69. Plaintiff cites to a Citizen Complaint where it was alleged that in 2006 Bigda chased the | <u>Complaint at ¶ 78 , Bigda IIU</u> |

| Material Fact | Evidence for Fact |
|---|---|
| complainant's son, and when the boy entered her apartment the detective broke down her door and entered, then broke the boy's jaw with a punch, choked him, threw him to the floor, kicked him and pointed a gun at the mother.. However, this complaint was, similarly, not sustained against Det. Bigda. | |
| 70. Plaintiff cites to the 1997 federal district court case, where it was alleged that Bigda and Templeman violated the plaintiff's [Livingston] civil rights. However, this case was settled out of court in 1999 and there has been no evidence regarding the liability of Det. Bigda or the Springfield Police Department. | Complaint at ¶ 82; Livingston v. Springfield et al., USDC Docket No 3:97:cv-30166. |
| 71. Officer Bigda has never had a civilian complaint sustained against him during his time with the Springfield Police Department. Further, documents provided by the Defendant show that, in addition to recruit academy training, Officer Bigda received annual updated in-service training specific to use of force and defensive tactics from 2009-2015. | Ex. 4(b) Bigda IIU Summary; Ex. 7 Bigda Training |
| 72. The Complaint alleges that in April 2007 a Superior Court judge threw out drug evidence in two criminal cases, *Commonwealth v. Early* and *Commonwealth v. Davis,* based on an unlawful search Detective Bigda ordered. The Complaint alleges Judge Tina S. Page found that | Complaint at ¶¶ 70-73. |

| Material Fact | Evidence for Fact |
|---|---|
| Detective found that Detective Bigda had ordered a United Parcel Service manager in West Springfield to open a package without a warrant or other legal basis for doing so. While a Fourth Amendment violation was the basis for the suppression in that criminal case, there were no allegations of excessive force, no citizen's complaint, and no civil lawsuit or other facts attributing the incident to a lack of training or discipline. | |
| **4.   Detective Robert Patruno– Springfield Police Department.** | |
| 73. The Plaintiff has stated two events which relate to Detective Patruno. | Complaint at ¶¶ 60, 61-62. |
| 74. The Plaintiff cites to Thomas v. City of Springfield. As explained supra at Bigda, the Thomas case was tried before a jury and a favorable verdict for the Defendants was returned. | Complaint at ¶ 60; Thomas Judgment. |
| 75. At paragraphs 61-62 of the Complaint, the Plaintiff cites to a Citizen Complaint where it was alleged in 2009 that Det. Patruno took a woman by the hair and banged her head into a wall until she blacked out. However, this complaint was not sustained against | Complaint at ¶¶ 60-62; Detective Patruno IIU. |
| 76. The          Plaintiff          propounded | Ex 10 Patruno Ans ti Ints and ; |

| Material Fact | Evidence for Fact |
|---|---|
| interrogatories on Det. Robert Patruno, where he was asked to provide information relating to any civilian complaint alleging excessive force against him. Detective Patruno provided three incidents: (1) Derek Besaw in 2007 (not sustained); (2) Sergio DeJesus in 2001 (retraining); and, (3) Denise Ortega in 2009 (not sustained). <u>Id</u>. All but one of these complaints was not sustained, and as to one incident Det. Patruno was ordered to receive retraining. | <u>Ex. 4(b) Patruno IIU</u> <br><br> <u>Ex. 7 - Patruno Training File.</u> |
| **5. <u>Detective Mark Templeman – Springfield Police Department</u>** | |
| 77. The Plaintiff stated five events relating to Detective Templeman. However, the City has denied the allegations as not accurately reflecting established facts. | <u>Complaint at ¶¶ 60, 64, 65, 74 -77, 82; Answer at ¶¶ 64, 65, 74-77.</u> |
| 78. Plaintiff cites to a 2012 federal district court case, <u>Thomas v. Springfield.</u> This case as described <u>supra at Bigda</u>, resulted in a favorable verdict to all Defendants. Plaintiff cites to the 1997 federal district court case <u>Livingston v. Springfield et al</u>. This case as described, <u>supra at Bigda</u>, resulted in an out of court settlement. Further, documents provided by the Defendant show that Det. Templeman of the Springfield Police Department received training specific to use of force and | <u>Complaint at ¶ 60. Ex. Thomas Judgment. Complaint at ¶ 82. Ex. Templeman Training.</u> |

| Material Fact | Evidence for Fact |
|---|---|
| defensive tactics for the years 2009-2015. | |
| 79. In another criminal case cited by Plaintif, *Commonwealth v. Reyes,* a Hampden Superior Court Judge (Page, J), the Court held a Franks hearing to determine if Templeman had provided false testimony in an affidavit to obtain a search warrant. According to the complaint "Justice Page, threw evidence out of the case after finding that detective Bigda and Templeman had given false testimony about the movements of a defendant". In fact, a review of the case shows While a Fourth Amendment violation was the basis for the suppression in that criminal case, there were no allegations of excessive force, no citizen's complaint, and no civil lawsuit or other facts attributing the incident to a lack of training or discipline. | Complaint at ¶75; Commonwealth v. William Reyes, Hampden Superior Court, HDCR2007-00281. |

### 6. Other non-party police officers

| | |
|---|---|
| 80. The Plaintiff cites to other cases where none of the officers who are defendants in this case were named parties. The case of *Baldwin v. Ryan et al.*, USDC Docket No. 3:07-cv-30167, filed September 10, 2007, alleged that an African American male was beaten "brutally upon the head face and body by three white police officers" while he was handcuffed. The Baldwin-Complaint was handwritten and alleged no specific claims against any particular person or officer, | Complaint at ¶ 79; 2. Baldwin v. Ryan et. al., 3:07-cv-30167-MAP (2007) |

| Material Fact | Evidence for Fact |
|---|---|
| subsequently, the Baldwin-Plaintiff was ordered to file an amended complaint within thirty-days or face dismissal. <u>Id</u>. On May 30, 2008, your Honor entered a Judgment in favor of the Defendants. | |
| 81. In a complaint dating back more than thirteen years ago, and not involving any of the officers named here, *Alvarez v. Meara, et al.,* USDC Docket No. 3:03-cv-30062, filed on April 4, 2003, a Springfield resident alleged that during the search of a home Detective Bates "punched the plaintiff in the side of the head" and other SPD officers "began kicking and punching the plaintiff." The City of Springfield, denied all allegations within the complaint against them. Alvarez was dismissed prior to the final disposition of any of the contested facts. | <u>Complaint at ¶ 81</u>; <u>3. Alvarez v. Meara, et al., 3:03-cv-30062-MAP (2003)</u> |
| 82. The Complaint also references the case where a former Springfield Police Officer, Jeffrey M. Asher was videotaped striking Melvin Jones on the hood a police cruiser with a metal flashlight in 2009. Jones v. City of Springfield, et al., USDC Case No. 3:10-cv-30244-MAP, Doc. 51, 6/6/2011. Officer Asher spent a year in jail on a criminal assault conviction. Officer Asher was terminated from employment with the Springfield Police. The City of Springfield settled Jones' suit for $575,000 in 2012. All of the officers involved in the case were disciplined after a hearing carried out by the CPHB and recommendation to the Police Commissioner. No judgment ever entered against any of | <u>Complaint at ¶¶ 84-88 Jones v. Asher, 3:10-cv-30244-MAP (2011)</u> |

| Material Fact | Evidence for Fact |
|---|---|
| the officers or the City. | |
| 83. Lastly, in another case where none of the officers here were involved, the Complaints cites to *Owens v. Sullivan et al*, 3:12-cv-30119-MGM. In that case, summary judgment was granted in favor of the City as to the *Monell* claim. | <u>Complaint at ¶ 58; Owens v. Springfield et al., 3:12-CV-30119-MAP (2013)</u> |

**THE DEFENDANT,**
**CITY OF SPRINGFIELD**
**By Its Attorneys**

/s/  Edward M. Pikula

_____

Edward M. Pikula, Esq. BBO #399770
City of Springfield Law Department
36 Court Street, Room 210
Springfield, MA  01103
Phone:  413-787-6085
Fax:      413-787-6173
Email: epikula@springfieldcityhall.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.
Date:


By:  /s/ Edward M. Pikula, Esq.
          Edward M. Pikula, Esq.


Kevin B. Coyle, Esq. BBO # BBO # 103540
935 Main Street
Springfield, MA 01103
413-787-1524
Fax: 413-787-1703
Email: attycoyle@aol.com

Andrew J. Gambaccini, Esq. BBO #654690
Austin M. Joyce, Esq. BBO #255040
John K. Vigliotti, Esq. BBO # 642337
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, MA 01609
508-754-7285
Fax: 508-754-7220
Email: agambaccini@rja-law.com
ajoyce@rja-law.com
jvigliotti@rja-law.com

Hector E. Piniero, Esq. BBO # 555315
Robert A. Scott, Esq. BBO # 648740
Law Office of Hector E. Piniero, PC
807 Main Street
Worcester, MA  01610
robin@pineirolegal.com
hector@pineirolegal.com

Joseph P. Kittredge, Esq. BBO # 548841
Margaret A. Rubino, Esq. BBO # 670344
Rafanelli & Kittredge, P.C.
1 Keefe Road
Acton, MA 01720-5517
978-369-6001
Fax: 978-369-4001
Email: jkittredge@rkpclaw.com
mrubino@rkpclaw.com