

# THE BASIC CURRICULUM

Massachusetts Criminal Justice Training Council

# Report Writing

# Report Writing

▲   In a free and democratic society, all segments of the criminal justice system are open to public scrutiny and subject to public record. A police report is often the first and most significant documented account of a criminal justice incident and becomes the public record of that incident. As such, the police report is a fundamental instrument of democratic policing. Therefore, the academy places high value on student officers' ability to write good reports.

▲   All reports are to be true, unbiased, and unprejudiced. These are easy words to say and sometimes hard to do. It is not always easy to know or find out the truth. However, it is clear that it is the police officer's moral obligation to seek the truth; and it is clear that lying is wrong. Truth and public trust cannot be separated.

▲   Police reports have a variety of users and uses. Police supervisors, investigators, prosecutors, judges, insurance agents, and attorneys all rely on police reports to ensure a fair justice system. A well-written report can be a significant tool in providing victims access to justice. Police reports are useful in prosecutions, in defense against wrongful accusations, as a permanent history in long-term investigations, and in holding police officers accountable when they are involved in the incident.

▲   Anecdotal evidence supports the idea that citizens are just as interested in fair criminal justice processes as in fair outcomes. A fair process ensures that each citizen has an opportunity to tell his or her story. The process of listening to citizens and fairly recording what they say is essential to democratic policing.

▲   A good report is one that the officer is proud of and will not want to deny years later. Good report writing depends on sound, basic writing skills. These skills are usually developed over years of education. The academy assumes that student officers have the reading and writing skills that will allow them to perform at a high level of proficiency. In the case of report writing, education matters.

▲   A basic tenet of report writing is, "If it isn't in the report, it didn't happen." Thoroughness counts.

# LEARNING OUTCOMES

At the close of this module, the student officer should be able to:

▲ Recognize the importance and purpose of police reports.

▲ List the seven elements of good police reports.

▲ Identify basic guidelines for using interviews to collect report information.

▲ Demonstrate proper note-taking techniques.

▲ Discuss the general rules for organizing police reports.

▲ Explain the elements of writing style and provide examples of each.

▲ Recognize errors or deficiencies in police reports.

▲ Complete special police reports thoroughly and accurately.

▲ Understand the impact of the Criminal Offender Record Information (CORI) laws.

▲ Write police reports clearly, accurately, and concisely.

▲ Identify when the officer may use obscene, medical, and scientific terms in the police report.

▲ Recognize when the officer may include his or her opinion in the police report.

▲ Name uses for the officer's notes.

▲ Explain how police reports and records support community-policing initiatives.

# CONTENT SUMMARY

This module has the following sections:

I.     Understanding the Importance and Purpose of Police Reports

II.    Identifying the Elements of Good Report Writing

III.   Gathering Information for the Police Report

IV.    Documenting Information Through Proper Note Taking

V.     Organizing Police Reports

VI.    Learning the Elements of Writing Style

VII.   Completing Special Police Reports

VIII.  Exploring Criminal Offender Record Information Laws

# I.   UNDERSTANDING THE IMPORTANCE AND PURPOSE OF POLICE REPORTS

A.   Effective written communication is essential if the criminal justice system *(see the Criminal Justice System module)* is to function successfully.

B.   Police officers, one partner in the criminal justice system, use written communication daily to perform their jobs and serve their communities.

   1.   The officer must be able to write effectively to:

      a)   Record events accurately

         (1)   Poorly written police reports are often unclear and incomplete.

      b)   Communicate with other officers

         (1)   The police staff who may read the officer's reports include:

            (a)   Supervisors

            (b)   The chief

            (c)   Command staff

            (d)   Detectives

            (e)   Investigating officers

         (2)   Other police agencies may also read the officer's reports.

      c)   Communicate with other criminal justice officials

         (1)   The people in the criminal justice system who read an officer's reports include:

            (a)   Attorneys

            (b)   Jurors

            (c)   Social-services personnel

**THE BASIC CURRICULUM**

          (d)     The media

          (e)     Insurance-company employees

          (f)     Town/city/federal agency personnel

          (g)     Selectmen or government officials

    d)     Serve the interests of their fellow community members

       (1)     Unbiased, accurate police reports help the officer ensure justice is dispensed fairly and equitably.

C.     Police reports serve the criminal justice system and the community because they:

    1.     Provide a controlled avenue of communication through the police department

    2.     Form a database of statistical information on which policing strategies, policies, and services are based

    3.     Serve as permanent and accurate written records of police activity

    4.     Support officers' actions by recording the legal justifications for certain actions (e.g., probable cause or reasonable suspicion; *see the Constitutional Law module*)

    5.     Facilitate follow-up investigations by providing detectives and other investigative personnel case information

    6.     Give the courts accurate information for trial preparation and presentation *(see the Court Procedures module)*

    7.     Help officers recall information when testifying in court *(see the Court Procedures module)*

    8.     Provide a means of judging officers' knowledge, accuracy, and overall performances in community-service efforts

# II.  IDENTIFYING THE ELEMENTS OF GOOD REPORT WRITING

A.    All good police reports have seven qualities.

    1.    Good reports are *clear*.

        a)    Clarity should be the officer's primary goal when writing reports, which means all statements should be:

            (1)    Worded precisely

            (2)    Obvious to the reader

            (3)    Detailed, to eliminate confusion

        b)    The police report should "illustrate" what happened with words.

    2.    Good reports are *correct*.

        a)    The officer's reports should be factually and mechanically correct.

            (1)    *Factual correctness* requires the officer to include only exact information about events.

                (a)    The officer should use relevancy to decide which information to include in the report.

                    i)    If the information relates to or bears on the incident, the officer should include it in the report.

                    ii)    If the information does *not* relate to or bear on the incident, the officer should omit it from the report.

                (b)    The officer should record only the facts of an incident *(see Subsection 6 following)*.

            (2)    *Mechanical correctness* requires the officer to write properly.

                (a)    The proper use of English includes:

                    i)    Word choice

                    ii)    Sentence structure

        iii)     Verb tense

        iv)     Punctuation

        v)     Spelling

   (b)    For more about writing style, see *Section VI* following.

3.    Good reports are *complete.*

   a)    The officer can help to ensure reports are complete by answering the five *W*s and one *H* of investigation:

    (1)    *W*ho?

      (a)    Examples of "who" questions include:

        i)     "Who are the suspects, victims, and witnesses?"

        ii)     "Who called?"

        iii)     "Who discovered the crime?"

        iv)     "Who responded?"

        v)     "Who was arrested?"

        vi)     "Who had a motive?"

    (2)    *W*hat?

      (a)    Examples of "what" questions include:

        i)     "What happened?"

        ii)     "What is the suspect's description?"

        iii)     "What is the suspect's flight direction?"

        iv)     "What is the suspect's mode of flight?"

        v)     "What evidence is at the scene?"

      vi)    "What was the suspect's motive?"

(3)    *When?*

    (a)    Examples of "when" questions include:

        i)    "When did the crime, incident, or accident occur?"

        ii)    "When was the suspect last seen?"

        iii)    "When was the suspect's vehicle towed?"

        iv)    "When was the suspect arrested?"

(4)    *Where?*

    (a)    Examples of "where" questions include:

        i)    "Where did the crime or incident occur?"

        ii)    "Where was the suspect first seen?"

        iii)    "Where was the suspect arrested?"

        iv)    "Where was the victim last seen?"

        v)    "Where was the evidence found?"

        vi)    "Where was the murder weapon found?"

(5)    *Why?*

    (a)    Examples of "why" questions include:

        i)    "Why did the suspect use the chosen method to commit the crime?"

        ii)    "Why was the suspect's vehicle stopped?"

(6)    *How?*

    (a)    Examples of "how" questions include:

        i)    "How did the accident occur?"

        ii)     "How did the suspect enter?"

        iii)    "How did the suspect escape?"

        iv)    "How did the suspect commit the crime?"

        v)     "How was the crime discovered?"

        vi)    "How much damage was done?"

        vii)   "How much property was stolen?"

4. Good reports are *concise.*

    a) Police reports should be "to the point," which means the officer should:

        (1) Record only the facts.

        (2) Avoid using unnecessary words.

5. Good reports are *chronological (see Subsection IVC1 following).*

    a) When writing reports, the officer should order events logically from the earliest to the latest.

6. Good reports are *objective.*

    a) The officer should be:

        (1) Unbiased

        (2) Equitable

        (3) Nonprejudicial

    b) The officer should not allow personal feelings to influence his or her reports.

7. Good reports are *neat.*

    a) To prepare reports neatly, the officer should legibly print or type all information.

        (1) If the officer must handwrite a report, he or she should:

(a)    Block print only.

    i)    Block printing is preferable for police reports, because reports written in longhand are sometimes illegible.

(b)    Use blank ink.

    i)    Blank ink is preferable for handwritten police reports, because pencil or blue ink may not easily photocopy.

(2)    The officer should not submit reports with cross-outs or stray marks.

## III.  GATHERING INFORMATION FOR THE POLICE REPORT

A.    Interviewing subjects to collect information for the report

    1.    Purpose of the police interview

        a)    The interview is one of the officer's primary tools for gathering all relevant information about an incident from anyone who may be involved in that incident *(see the Interview and Interrogation module)*.

    2.    Guidelines for interviewing

        a)    To conduct an efficient and effective interview, the officer should:

            (1)    Conduct the interview as soon after the incident as possible.

            (2)    Whenever possible, hold the interview in a quiet place like a separate room or the cruiser.

            (3)    Allow the interviewee to explain what happened in his or her words.

                (a)    To help keep the interview focused, the officer should keep the interviewee from discussing unrelated topics.

(4)    Whenever possible, prompt interviewees to provide specific
       statements, not relative ones, about suspects and incidents.

    (a)    *Relative statements* compare a person, an object, or
       an event to some undefined norm.

        i)    Examples of relative words include:

- Big

- Fat

- Thin

- Tall

- Short

- Old

- Dark

(5)    Remain professional, polite, and interested.

    (a)    To convey he or she is interested in the case and
       willing to listen, the officer should maintain eye
       contact with the interviewee *(see the One-on-One
       Communication module).*

    (b)    Witnesses are more inclined to talk to police and
       provide information if they are comfortable with
       and trust the officer.

(6)    Make every effort to make the interviewee comfortable and
       gain his or her trust.

    (a)    The officer will encounter people who are reluctant
       to speak to police.

        i)    Community members may be unwilling to
          get involved in a case by providing
          information because they fear for their
          safety.

(b)     The officer should establish trust and a comfort level with the interviewee so note taking is possible.

       i)     Above all, the officer should listen attentively and avoid interrupting the interviewee's flow of conversation.

# IV. DOCUMENTING INFORMATION THROUGH PROPER NOTE TAKING

A.     Purpose of police note taking

    1.     The officer takes notes to refresh his or her memory of the people and events at a crime scene.

       a)     Few officers can remember all the vital details of an incident.

    2.     Proper note taking is essential to good report writing.

B.     Basic elements of proper note taking

    1.     The officer should always include the following basic information when taking notes:

       a)     Day, date, and approximate time

       b)     Location

       c)     Biographical information of all people involved, including:

            (1)     Full name (last, first, and middle)

            (2)     Date of birth

            (3)     Address(s)

            (4)     Social security number

            (5)     Telephone numbers (home and business)

       d)     Physical description of the suspect

        (1)     The physical description of the suspect, missing person, or person wanted in connection with the crime is crucial.

        (2)     The officer should ensure the suspect's description is as accurate and as detailed as possible.

           (a)     The officer should note any of the suspect's unique identifying features, like scars or physical deformities.

    e)     Description of the suspect's escape vehicle, if applicable

    f)     Sketch of the crime scene/crime area, if necessary *(see the Crime Scenes module)*

  2.    The officer can gather some biographical information by asking community members for their drivers licenses or other forms of identification.

C.    Guidelines for proper note taking

  1.    The officer should take notes in chronological order *(see Subsection IIA5 preceding)*.

    a)     Recording events chronologically (in the order in which they occurred) is easier than recording them randomly.

    b)     Chronological notes flow logically, which eases report writing.

    c)     If the officer takes notes out of sequence for any reason, he or she should number or letter them in order.

  2.    In general, it is better for the officer to take too many notes than too few.

    a)     The magnitude and/or complexity of the incident determines the quantity of the officer's notes.

    b)     On-the-job experience helps the officer decide how many notes to take.

  3.    While taking notes, the officer should remember the information he or she needs to complete the report *(see Subsection IIA preceding)*.

a)    One of the officer's primary responsibilities is to ensure the report has all the necessary legal elements.

    (1)    To ensure the report is legally sound, the officer should:

        (a)    Fully explain how he or she developed probable cause *(see the Constitutional Law module)*

        (b)    Describe the components of probable cause *(see the Constitutional Law module)*

        (c)    Document all the elements needed to charge the suspect with the crime *(see the Criminal Law module)*

    (2)    If the officer fails to state legal facts in the report:

        (a)    Charges against the suspect could be dropped

        (b)    A civil lawsuit could be filed

b)    If the officer takes notes with the report in mind, he or she is more likely to gather all needed information.

    (1)    Missing or inaccurate information can:

        (a)    Hurt the credibility of the report and the officer

        (b)    Threaten the safety of the community

        (c)    Fail the criminal justice system

4.    The officer should make notes as specific as possible.

a)    The more specific the officer's notes, the more useful they are to the officer and the community.

5.    The officer should avoid documenting relative statements from interviewees *(see Subsection IIIA2a][4] preceding)*.

a)    The officer should document specific statements about incidents fully and accurately.

6.    The officer should save notes about serious incidents or cases that are likely to go to court.

THE BASIC CURRICULUM

7. The officer should separate case notes from personal notes.

   a) Because the officer's notes can be subpoenaed (called into court), it is important that the notes pertain *only* to the incident and are organized.

# V. ORGANIZING POLICE REPORTS

A. The officer should begin the report-writing process by organizing his or her relevant notes into an outline, particularly when the incident is complex.

   1. Outlines greatly enhance the officer's ability to write clear, concise, and complete reports *(see Subsection IIA preceding)* by:

      a) Providing a framework for each report

      b) Decreasing the chances the officer will omit valuable information

   2. As the officer gains practical report-writing experience, he or she may need to rely on outlines less often.

B. The officer should use paragraphs to write the report.

   1. A *paragraph* is a group of related sentences that develop one idea.

      a) Paragraphs enhance the report's:

         (1) Organization

            (a) Good paragraphs are:

               i) Unified

               ii) Logical

               iii) Fully developed

         (2) Readability

            (a) Good paragraphs are:

               i) Coherent

      ii)  Signs of main ideas or events

   2.  Reports without paragraphs are:

      a)  Confusing

      b)  Difficult to read

C. All reports, except the motor vehicle accident form *(see Subsection VIIA following)*, should begin with the day, date, and approximate time of the incident *(see Subsection IVB1a] preceding)*.

# VI. LEARNING THE ELEMENTS OF WRITING STYLE

A. Word choice

   1.  To achieve maximum accuracy and avoid possible legal challenges, the officer should use the word *approximately* when referring to times.

      a)  Clocks settings can vary greatly, and there is no practical way to determine exact times.

   2.  The officer should always preface his or her observations with *appeared, apparently,* or *seemed,* because observations are open to interpretation and human error.

   3.  The officer should not use words like *criminal* or *defendant* when writing reports because they are inflammatory and inaccurate.

      a)  The officer should use words like *suspect, operator, subject, witness,* or *victim* as appropriate.

   4.  The officer may use profanity or slang in a report when it is relevant to the incident (e.g., the suspect in an alleged bias-crime incident was quoted using profanity or slang).

      a)  The officer should enclose profanity or slang in quotation marks to make the speaker clear.

B. Sentence structure

   1.  The officer should write reports in complete sentences.

a)    A *complete sentence* has a subject and a verb and alone expresses an idea.

    (1)    Examples of complete sentences include:

        (a)    "The suspect [noun] left [verb] a trail of blood at the scene."

        (b)    "The crime scene [noun] was [verb] dark."

2.    The officer should not use sentence fragments when writing reports.

a)    A *sentence fragment* is an incomplete sentence (a piece of a sentence).

    (1)    Examples of sentence fragments include:

        (a)    "Believing in justice for all" (lacks a subject)

            i)    A complete sentence is, "The officer [subject] believes [verb] in justice for all."

        (b)    "The investigator's many blood samples at the scene" (lacks a verb)

            i)    A complete sentence is, "The investigator [subject] took [verb] many blood samples at the scene."

3.    The officer should never use run-on sentences when writing reports.

a)    *Run-on sentences* are two complete sentences *(see Subsection 1 preceding)* that are joined without punctuation.

    (1)    Run-on sentences are confusing.

    (2)    Examples of run-on sentences include:

        (a)    "The report-writing manual will be issued Wednesday Captain Flagg reviewed it Monday."

            i)    The run-on sentence should be punctuated, "The report-writing manual will be issued Wednesday. Captain Flagg reviewed it Monday."

(b) "The suspect left the scene on foot officers ran after her."

    i) The run-on sentence should be punctuated, "The suspect left the scene on foot. The officers ran after her."

C. Punctuation

1. Punctuation is an important part of writing correctly.

   a) When writing reports, officers often:

     (1) Fail to use punctuation

     (2) Use punctuation incorrectly

2. Correct punctuation usage

   a) *Commas* are used to:

     (1) Separate members of a series

        (a) For example, "*Don, Mike, Bill, and Sam* are here."

     (2) Set off words in direct address

        (a) For example, "I believe, *Mr. Clark,* that you are wrong."

     (3) Separate a noun or a pronoun that is not closely connected with the sentence

        (a) For example, "Martha, the *president* of our class, is popular."

     (4) Separate introductory words, phrases, or clauses

        (a) For example, "*When the officers return from the crime scene,* we will review the case."

     (5) Set off short, direct quotations

        (a) For example, *"I believe,"* Officer Casey replied, *"that Officer Thompkins can take the case."*

(6)   Set off geographical names (e.g, cities and states)

   (a)   For example, "We plan to visit *Albany, New York,* next year."

(7)   Set off any parenthetical material (a word or phrase inserted in a sentence to explain or modify the thought)

   (a)   For example, "I will go to the scene, *of course,* if I am needed."

(8)   Indicate a word or an expression has been omitted

   (a)   For example, "Edith is studying algebra; John, history."

(9)   Separate months and years

   (a)   For example, "*July 4, 1776,* is an important date in history."

(10)   Set off *etc.* (et cetera) in a series

   (a)   For example, "The kids bought peanuts, popcorn, candy, *etc.*"

b)   *Periods* are used to:

(1)   End sentences

   (a)   For example, "There is a letter for you at the post office."

(2)   Punctuate abbreviations and initials

   (a)   For example, periods punctuate *Mr., N.Y., Inc., a.m.,* and *Ph.D.*

(3)   Represent decimal points

   (a)   For example, periods represent decimal points in *0.06* and *$31.25.*

c)   *Question marks* are used to:

    (1)      End interrogative sentences

        (a)      For example, "What is the price of that hat*?*"

d)    *Exclamation points* are used to:

    (1)      End exclamatory  words, phrases, and sentences

        (a)      For example, "Nonsense*!*" he shouted. "I am glad to see you*!*"

e)    *Dashes* are used to:

    (1)      Indicate a sudden change in thought

        (a)      For example, "I will write the letter–but I won't tell him about it."

    (2)      Surround parenthetical material

        (a)      For example, "Sometime last week–I have forgotten the day–it rained."

    (3)      Introduce a clause that summarizes a preceding list

        (a)      For example, "English, algebra, and science–these are important subjects."

f)    *Parentheses* are used to:

    (1)      Enclose disconnected expressions

        (a)      For example, "Our class president failed to be promoted (would you believe it?)."

g)    *Apostrophes* are used to:

    (1)      Substitute for letters in contractions

        (a)      For example, "If you *don't* [do not] remind him, he *won't* [will not] remember."

    (2)      Indicate the possessive case

         (a)     For example, "*Fred's* success resulted from his *mother's* teaching."

D.     Verb tense

    1.     Active voice v. passive voice

        a)     There are two voices in writing:

            (1)     Active

            (2)     Passive

        b)     In a sentence written in active voice, the subject acts.

            (1)     For example, in the sentence, "Students seldom read long books," the students are performing the action of reading.

        c)     In a sentence written in passive voice, the subject is acted upon or receives the action.

            (1)     For example, in the sentence, "Heavy books are seldom read by students," *heavy books* are acted upon by the verb, because they *are read* by the students.

        d)     The officer should write all reports in active voice because active voice is:

            (1)     Clearer than passive voice

            (2)     Stronger than passive voice (more decisive)

            (3)     More concise than passive voice (needs fewer words)

    2.     Past verb tense v. present verb tense

        a)     The officer should use the past verb tense when recording actions that have been completed (e.g., a witness's statement).

            (1)     For example, if a witness tells the officer he saw the suspect leave the scene, the officer should write, "The witness *said* he *saw* the suspect leave the scene in a brown truck."

    b)    The officer should not use present tense to describe an action that has been completed.

        (1)    For example, if a witness tells the officer she has seen the suspect strike the victim more than once, the officer should write, "The witness said she saw the suspect strike the victim more than once," *not,* "The witness says she sees the suspect strike the victim."

        (2)    In the preceding example, present verb tense indicates the witness is still talking, which is inaccurate.

    c)    The officer should use verb tense consistently and appropriately when writing reports.

        (1)    Changing verb tenses is a common officer error.

## E.    Style

    1.    Formatting names in reports

        a)    The officer should use standard format to record names in police reports.

            (1)    The first time the officer uses a name in the report, he or she should include, in order, the:

                (a)    Last name

                    i)    To highlight the person's last name, the officer should capitalize and underline it each time it appears.

                (b)    First name

                (c)    Middle initial

            (2)    After the officer first uses the person's full name in the report, he or she should use only the last name all times thereafter.

        b)    The standard police format of recording names:

            (1)    Eliminates confusion

**THE BASIC CURRICULUM**

        (2)      Facilitates reading comprehension

2.    *Capitalization* is used for:

    a)      Last names and proper nouns

    b)      The first word of every sentence

    c)      The first word of a direct quotation

    d)      Compass directions when they refer to specific geographic areas (e.g., the East Coast or the Northern Hemisphere)

    e)      The names of military groups, battles, and wars

    f)      The pronoun *I*

    g)      The names of ships, planes, and trains

    h)      The days of the week and months

    i)      The names of religious groups, books, deities, events, figures, and holidays

    j)      Nationalities and ethnic groups (e.g., African Americans)

    k)      The names of institutions and organizations (e.g., the National Organization for Women [NOW])

    l)      Titles of address, position, and rank (e.g., Chief Bowen)

    m)      Significant words in publication titles (e.g., *Law Enforcement and the Changing World)*

        (1)      Short words like *a, the*, and *in* are generally not capitalized in titles unless they appear first or last.

3.    Spelling

    a)      Spelling errors are one of the easiest ways to provoke criticism about a police report.

    b)      When the officer is unsure of a word's spelling, he or she should look it up in the dictionary and/or use the computer's spell-check function.

    c)    Officers often have trouble with *homonyms*, words that sound alike but have different spellings and meanings.

        (1)    Examples of homonyms include:

            (a)    *Accept* and *except*

            (b)    *Your* and *you're*

        (2)    Homonyms are often difficult for the officer to detect because they do not look misspelled, unlike words like *suspext* and *krime*.

4.    Numbers

    a)    When a number is between *0* and *10*, the officer should spell it out and follow it with the number in parentheses.

        (1)    For, example, "Officer Smith wrote ten (10) parking tickets today."

    b)    When the number is greater than *10*, the officer should use the number alone.

        (1)    For example, "The night shift made 64 arrests last month."

# VII.  COMPLETING SPECIAL POLICE REPORTS

A.    The motor vehicle accident report

    1.    To complete the standard Police Officers Motor Vehicle Accident Report Form (Massachusetts Registry of Motor Vehicles Form E-65) properly, the officer should:

        a)    Complete each box and line.

            (1)    If lines or boxes do not apply, the officer should mark them *N/A* for "not applicable."

        b)    Use the proper name format *(see Subsection VIE1 preceding)*.

 c) Describe vehicle damage as "vehicle damage" only, and document the area that is damaged.

  (1) The officer should not describe vehicle damage in detail.

 d) Estimate the cost of the vehicle damage only as above or below the statutory $1,000 minimum.

  (1) For example, the officer should record *$1,000+* or *$1,000-*.

 e) Write a "medical disclaimer" in the box labeled "To what hospital was injured taken" on p. 1, even if there were no injuries in the accident.

  (1) The medical disclaimer is important for liability purposes.

  (2) The officer should use the phrase, *All persons declined medical treatment,* or words to that effect.

2. Writing a proper and complete motor vehicle accident report

 a) The narrative in a motor vehicle accident (MVA) report generally consists of a brief statement from each of the involved vehicle operators.

 b) The MVA narrative has only six lines.

  (1) Unlike other report narratives, the MVA narrative is only a brief overview.

 c) Although the MVA narrative is brief, it is often difficult for the officer to write.

  (1) To make writing the MVA narrative easier, the officer should keep the focus narrow, including only references to how the accident occurred.

   (a) For example, the officer may write, "Operator of Motor Vehicle 1 was traveling north on Bay Street. Operator stated he was traveling 25 mph in a 30-mph zone when he ran off the roadway into a ditch. No vehicles were towed from scene."

    d)     If the officer needs more than six lines for the MVA narrative because the accident is complex, he or she should complete a formal crime/incident report *(see Subsection B following)*.

3.     Compiling and drawing a proper motor vehicle accident diagram

    a)     Because space in the motor vehicle accident (MVA) narrative is limited *(see Subsection 2 preceding)*, it is critical that the officer complete the diagram section of the MVA report as neatly and as accurately as possible.

        (1)     As the adage goes, "A picture is worth a thousand words."

    b)     The MVA diagram, which illustrates the mechanics of the accident, should include:

        (1)     Street names

        (2)     Street boundaries

        (3)     Traffic control devices, if present

        (4)     Locations of witnesses or pedestrians

        (5)     Structures related to the accident (e.g., trees, poles, or medians)

B.     The crime/incident report

1.     Basic format for the crime/incident narrative (Hermes, 1987)

    a)     Origin

        (1)     To report the origin of the crime or incident, the officer should:

            (a)     Always begin the crime/incident report with the day, date, and approximate time *(see Subsection IVB1a] preceding)*.

            (b)     Explain how he or she became aware of the crime (e.g., dispatched, flagged down by witness, saw it, told by partner).

    b)     Victim or reporting party statements

**THE BASIC CURRICULUM**

    (1)    To report victim or reporting-party statements regarding the crime or incident, the officer should:

        (a)    Explain what the victim or reporting party told him or her.

  c)    Witness statements

    (1)    To report witness statements regarding the crime or incident, the officer should:

        (a)    Explain what each witness stated.

            i)    Witnesses should be separated during interviews.

  d)    Officer observations

    (1)    To report his or her observations regarding the crime or incident, the officer should:

        (a)    Include anything he or she observed, heard, smelled, or felt that is relevant to the case.

        (b)    Supply any information that may help the follow-up investigation.

  e)    Physical evidence

    (1)    To report the physical evidence that was seized *(see the Crime Scenes module)* in the crime or incident, the officer should:

        (a)    Describe the item, including its:

            i)    Size

            ii)    Shape

            iii)    Weight

            iv)    Color

            v)    Disposition

        (b)     Note who seized the evidence.

        (c)     Document the item's location when found.

        (d)     Record the person who photographed the evidence, if anyone.

f)     Property loss

    (1)     To report any property lost in the crime or incident, the officer should:

        (a)     Describe any other details about the property, including identifying marks and damage.

g)     References

    (1)     To refer the reader to additional information about the crime or incident, the officer should:

        (a)     Note additional reports for further information about the incident.

2.    The officer can format the crime/incident narrative with headings or without.

    a)     To format the crime/incident narrative with headings, the officer should list each heading in the narrative sequentially (e.g., "Origin" or "Victim or Reporting Party Statements"), and address each thoroughly.

       (1)     Many officers find the heading format easier to work with than the nonheading format *(see Subsection b] following)*, because headings are difficult to omit or overlook.

       (2)     Officers with no report-writing experience may find the heading format useful.

    b)     To format the crime/incident narrative without headings, the officer should write the narrative without listing each heading.

       (1)     Because headings are not listed in this format, the officer should take other steps to ensure each heading is addressed thoroughly.

**T H E   B A S I C   C U R R I C U L U M**

        (2)     If the fails to thoroughly record information for each head eport will be incomplete.

C.    The operating under the infl port

    1.    The officer should us rd narrative format to complete the operating under the influence ( ort because it helps:

        a)    Departments st ze their records

        b)    Officers write c e, concise reports

    2.    Basic format for the op under the influence (OUI) narrative (Hermes, 1987)

        a)    Origin

            (1)    To report ti gin of the OUI incident, the officer should:

                (a)    Des how he or she became aware of the vehicle (e.g. or she saw it, another motorist saw it and told officer).

        b)    Vehicular observati and violations

            (1)    To report the hicular observations and violations in the OUI incident, e officer should:

                (a)    Descri in detail and chronological order the vehicul movements and/or MGL c. 90 violations he or s observed before making the stop.

                    i)    The officer should be very specific.

        c)    Initial contact

            (1)    To report his or her initial contact with the operator in the OUI incident, the officer should:

                (a)    Describe his or her first observations upon contacting the operator.

                    i)    The officer should be very specific.

        d)    Field sobriety test(s)

(1) To report the field sobriety test(s) administered in the OUI incident, the officer should:

    (a) Detail the tests that were given.

    (b) Name the order in which the tests were given.

    (c) Note the operator's performance(s).

e) Physical evidence

(1) To report the physical evidence that was seized *(see the Crime Scenes module)* in the OUI incident, the officer should:

    (a) Describe the item, including its:

        i) Size

        ii) Shape

        iii) Weight

        iv) Color

        v) Disposition

    (b) Note who seized the evidence.

    (c) Document the item's location when found.

    (d) Record the person who photographed the evidence, if anyone.

f) Statements after admonishment

(1) To report the operator's statements after admonishment in the OUI incident, the officer should:

    (a) Report any pertinent statements the arrestee made:

        i) After being read the Miranda rights *(see the Arrest and Processing Detainees module)*; or

          ii)      During booking *(see the Arrests and Processing Detainees module)*.

g)      Breathalyzer results

    (1)    To report the operator's breathalyzer results in the OUI incident, the officer should:

        (a)    Record all results of the operator's breathalyzer test.

h)      Citation

    (1)    To report the operator's citation in the OUI incident, the officer should:

        (a)    Record the number of the citation.

        (b)    List the violation(s).

        (c)    Name the monetary punishment, if applicable.

3.    The officer can format the operating under the influence (OUI) narrative with headings *(see Subsection B2a] preceding)* or without *(see Subsection B2b] preceding)*.

a)      To format the OUI narrative with headings, the officer should list each heading in the narrative and address each thoroughly.

    (1)    Many officers find the heading format easier to work with than the nonheading format *(see Subsection B2b] preceding),* because the headings are difficult to omit or overlook.

    (2)    Officers with no report-writing experience may find the heading format useful.

b)      To format the operating under the influence (OUI) narrative without headings, the officer should write the narrative without listing each heading.

    (1)    Because the headings are not listed in this format, the officer should take other steps to ensure each heading is addressed thoroughly.

(2)     If the officer fails to thoroughly record information for each heading, the report will be incomplete.

D.     Additional police reports

    1.     Report for responding to a citizen complaint

        a)     Regardless of how well-trained or even-tempered an officer is, he or she will likely be the target of a citizen complaint at some point in his or her career.

        b)     Citizens lodge complaints against officers for various reasons.

            (1)     Some citizen complaints are warranted.

            (2)     Some citizen complaints are false and slanderous, motivated by anger and a desire for revenge.

        c)     The officer must be able to respond to citizen complaints and defend him- or herself adequately.

            (1)     The officer who cannot respond to complaints and lodge an adequate defense could experience disciplinary action or civil or criminal liability.

    2.     Court complaint application

    3.     Stolen motor vehicle report

    4.     Massachusetts Registry of Motor Vehicle (RMV) form

        a)     Request for Immediate Threat License Suspension/Revocation

        b)     Report and Affidavit of an Operating after Suspension/Revocation Incident

        c)     Affidavit of MGL c. 138, s. 34B

# VIII. EXPLORING CRIMINAL OFFENDER RECORD INFORMATION LAWS

**THE BASIC CURRICULUM**

A.    The Criminal Offender Record Information (CORI) laws affect how police reports and related information are distributed to the community.

   1.    People who violate CORI laws can suffer severe criminal and civil penalties.

B.    The CORI laws affect the distribution of:

   1.    Arrest reports

      a)    Arrest reports can be released to the arrestee only *or* to a lawyer when the arrestee signs a third-party release form.

      b)    Domestic-violence victims *(see the Domestic Violence module)* can get arrest reports.

   2.    Offense reports

      a)    The person named in the offense report is entitled to have the report, but all offense reports are public record.

         (1)    Departments must use their discretion when distributing offense reports to the community.

      b)    The report of any offense under investigation is not available to the community.

      c)    Follow-up reports of offenses are not available to the community.

   3.    Motor vehicle accident reports

      a)    All motor vehicle accident reports are public record.

   4.    Logs

      a)    Each department must keep a CORI log of:

         (1)    The information it distributes

         (2)    When it distributes that information

         (3)    To whom it distributes the information

   5.    Reports of cost for copies

a)  The state of Massachusetts sets copy rates.

b)  Domestic-violence reports are free to the victims.

c)  Motor vehicle accident reports cost $5.00 per page.

d)  All other reports cost $0.50 per page.

## References

Bintliff, R.L. (1991). *How to write effective law enforcement reports.*

Hermes, B.D. (1987). *Report writing,* 1st ed.

Hope, H.E. (19XX). *The high school english workbook.*

Howell, J.F., & Memering, D. (1989). *Brief handbook for writers,* 2nd ed.

Steele, G.G. (19XX). *Shortcuts to basic writing skills.*

## Mailbox Exercise—Setting Priorities

The purpose of this exercise is to:

▲ Expose student officers to the paper flow typical in many police departments
▲ Have student officers practice setting priorities among competing interests

To lead this exercise, the instructor should:

1.  Gather samples of the documents the student officers are likely to find in their mailboxes when they return to work after days off. The instructor should gather or create documents that include:

    ▲ Memo from the chief to all staff regarding city council requests for traffic enforcement
    ▲ Assignment from the sergeant to attend a community meeting
    ▲ Memo from the supply officer about the replacement of old body armor
    ▲ Schedule for the next month with new days off, from the lieutenant
    ▲ Memo from the sergeant asking for an explanation of a citizen inquiry about a traffic ticket
    ▲ Note from a detective asking for follow-up interviews with neighbors of a household robbery victim

*Continued*

**THE BASIC CURRICULUM**

▲ Crime-analysis report describing break-ins occurring in the officer's patrol neighborhood, which juveniles appear to be committing in the early afternoon when they should be in school

▲ Hot-spot analysis of calls-for-service around a convenience store

▲ List of calls and reports on the officer's beat for the last week

▲ New general order on pursuits or another high liability issue

▲ New general order on handling restraining orders or another similar procedural issue

▲ Citizen letter commending the officer for handling natural death notification with courtesy and kindness

2. Instruct the student officers to read the documents, then prioritize them.

3. Direct the student officers to write why they gave each document its priority (why they considered the document more important than any document ranked below) and the action they plan to take in response to the document.

4. Conduct a debriefing in which each student officer explains his or her priorities and corresponding plans of action to the class. During the debriefing, the instructor should compare student officers' priorities and plans.

5. Conclude the session with the instructor's priority sequence and corresponding plans of action.

**THE BASIC CURRICULUM**

▲ Crime-analysis report describing break-ins occurring in the officer's patrol neighborhood, which juveniles appear to be committing in the early afternoon when they should be in school

▲ Hot-spot analysis of calls-for-service around a convenience store

▲ List of calls and reports on the officer's beat for the last week

▲ New general order on pursuits or another high liability issue

▲ New general order on handling restraining orders or another similar procedural issue

▲ Citizen letter commending the officer for handling natural death notification with courtesy and kindness

2. Instruct the student officers to read the documents, then prioritize them.
3. Direct the student officers to write why they gave each document its priority (why they considered the document more important than any document ranked below) and the action they plan to take in response to the document.
4. Conduct a debriefing in which each student officer explains his or her priorities and corresponding plans of action to the class. During the debriefing, the instructor should compare student officers' priorities and plans.
5. Conclude the session with the instructor's priority sequence and corresponding plans of action.